# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**Civil Action No.**

MARVIN VENENO,

      Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS FOR SAN JUAN COUNTY, a/k/a
San Juan County and San Juan County Detention Center,
SAN JUAN REGIONAL MEDICAL CENTER ("SJRMC"),
SUMMIT FOOD SERVICE, LLC,
YVONNE VALLES, RN, INDIVIDUALLY,
JANE DOE, RN OR LPN, INDIVIDUALLY,
THOR DAHL AND/OR JOHN DOE HEAD COOK, INDIVIDUALLY,
JACK DOE GUARD, INDIVIDUALLY,
MARK DOE GUARD, INDIVIDUALLY,

      Defendants.

---

# COMPLAINT

---

Plaintiff, by and through his attorneys, Holland, Holland Edwards & Grossman, and Tucker, Burns & Hatfield, complains against Defendant with a demand for a jury trial as follows:

## I. INTRODUCTION

1.    Marvin Veneno was an inmate at the San Juan County Detention Center who suffered injuries as a result of deliberately indifferent medical care by the Defendants between approximately October 5 and October 12, 2015.

2.    Mr. Veneno suffered from cardiac arrest due to being denied his prescribed heart medications, insulin and being forced to perform manual labor.

3.      For over 100 hours, Mr. Veneno was allowed to be suffering without medical care from dizziness, arm numbness and excruciating chest pain, despite repeatedly begging to be given his heart medications and insulin.

4.      Mr. Veneno finally succumbed to this reckless and egregious disregard of his medical crisis, went into cardiac arrest and collapsed on the floor on October 9th, 2015.  He woke up in the hospital where he learned that he had experienced a massive heart attack.

## II.  JURISDICTION AND VENUE

5.      This action arises under the Constitution and laws of the United States and is being brought pursuant 42 U.S.C. § 1983.

6.      Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331, 1343 and 1367.  Jurisdiction supporting Plaintiff's claim for attorneys' fees and costs is conferred by 42 U.S.C. § 1988.  This is a related case to 15-cv-00497 and Judge Browning has previously made preliminary injunction findings about this Plaintiff's claims in 15-cv-00417 and at a recent hearing counsel discussed with the Court filing this as a related case.

7.      Venue is proper in the District of New Mexico pursuant to 28 U.S.C. § 1391(b). All of the events alleged herein occurred within the State of New Mexico, and all of the parties were residents of the State at the time of the events giving rise to this litigation.

8.      Supplemental pendent jurisdiction is based on 28 U.S.C. § 1367 because the violations of federal law alleged are substantial and the pendent causes of action derive from a common nucleus of operative facts.

9.      Notice was given to the County under the Tort Claims Act.

## III.  PARTIES

2

10.     At all times pertinent hereto, the plaintiff, Marvin Veneno was a citizen of the United States of America and a resident of San Juan County in the State of New Mexico.

11.     All of the events described herein occurred in San Juan County, New Mexico between the dates of October 5, 2015 and October 9, 2015.

12.     Defendant San Juan Regional Medical Center ("SJRMC") is a New Mexico corporation doing business in New Mexico pursuant to a contract with San Juan County to provide incarcerated inmates with in house medical care at the San Juan County Detention Center since February 17, 2014 to present.  This Defendant's principal place of business is 801 W. Maple Street, Farmington, New Mexico.

13.     SJRMC is a proper entity to be sued under 42 U.S.C. § 1983 for its deliberately indifferent policies, practices, habits, customs, procedures, training and supervision of staff, including of individual Defendants, with respect to the provision of medical care and treatment for inmates with serious emergency medical needs.

14.     At all relevant times, SJRMC and its staff were acting under color of state law and performing a central function of the County.

15.     SJRMC is also  properly sued for negligence, as it is a private corporation and not entitled to immunity under the Torts Claims Act.

16.     SJRMC is sued directly and indirectly for negligence, negligent supervision, negligent training of their staff, for failing to ensure the provision of appropriate care in the treatment of Mr. Veneno, and for the acts and omissions of their agents and/or employees, and for the herein described acts by their involved employees, agents, staff, and affiliates, all while acting within the scope and course of their employment.

17.     Summit Food Service, LLC is also properly sued for negligence, as it is a private corporation and not entitled to immunity under the Torts Claims Act.

18.     Summit Food Service, LLC is sued directly and indirectly for negligence, negligent supervision, negligent training of their staff, for failing to ensure the timely obtaining or provision of appropriate care in the treatment of Mr. Veneno, for the negligent acts and omissions of their agents and/or employees, and for the herein described acts by their involved employees, agents, staff and affiliates, including but not limited to Defendant Thor Dahl and/or Head Cook Jack Doe's negligence in supervision, assignment, failure to intervene to summon urgently and obviously needed medical care and for  mandating that Plaintiff do and continue hard physical labor despite being consciously aware that he was very ill at the time and begging not to continue doing such stressful activity.

19.     At all times relevant hereto, Defendant Yvonne Valles, R.N. was a citizen of the United States and a resident of New Mexico. Defendant Nurse Valles was an employee of SJRMC and acted under color of state law.  She was informed of Plaintiff's medical conditions as of October 5, 2015.

20.     At all times relevant here to, Jane Doe Nurse was a citizen of the United States and a resident of New Mexico.  Defendant Jane Doe Nurse was an employee of SJRMC and acted under color of state law.

21.     At all times relevant here to, Jack Doe Guard and/or Mark Doe guards were citizens of the United States and a resident of New Mexico.  These Defendant guards were employees of SJCDF and acting under color of state law.  On information and belief, one of these guards may actually be named Michael Martinez.

22.     At all times relevant here to, Thor Dahl and/or John Doe Head Cook, if the two are not one and the same, was a citizen of the United States and a resident of New Mexico. Defendant Jack Doe Head Cook was an employee of SJCDF and acted under color of state law.

23.     Yvonne Valles, Jane Doe Nurse, Jack Doe Guard, Mark Doe Guard, and Defendant Thor Dahl and/or John Doe Guard, believed to be the head cook as set forth herein, are referred to collectively as "Individual Defendants."

24.     The Board of County Commissioners for San Juan County ("San Juan County" or "The County") is the public entity responsible for San Juan County and the San Juan County Detention Facility ("SJCDF" or "the jail") and a proper party to be sued under §1983.   This Defendant is also known as and has been identified thus far in the litigation as San Juan County and San Juan County Detention Facility.

25.     The County Defendant is responsible for the oversight, supervision and training of staff at the SJCDF.  The County Defendant is properly sued under 42 U.S.C. § 1983 with respect to the hereinafter challenged deliberately indifferent policies and practices for the care and treatment of persons detained at the SJCDF, as well as for the policies and practices of SJRMC Defendants acting as the contractual final delegated decision makers.

26.     San Juan County is also liable under the non-delegable duty doctrine for the deliberately indifferent policies of SJRMC.

### IV.  STATEMENT OF FACTS

27.     Marvin Veneno was in the custody of the San Juan County Detention Center ("the jail") from October 5-12, 2015.

28.     At the time of the complained of incidents, Mr. Veneno was a 62 year old insulin dependent diabetic who suffered from a known heart condition that required daily medication and monitoring.  His diabetes and heart condition were unmanaged throughout his incarceration.

29.     He had been previously treated for a heart attack in July, 2014.  At the time of this incarceration, Mr. Veneno was prescribed numerous daily medications, including Lisinpril, Carvedilol, Lipitor, Brilanta, Sodium Bicarbonate and Lantus Solin.

30.     Detention Center and Medical staff were made aware many times from October 5th to 9th of the seriousness of Mr. Veneno's condition and heavy heart medications dependence yet, with deliberate indifference, they chose to withhold obviously needed medical attention and refused to get him to a higher level of acuity.

31.     Mr. Veneno is a retired police officer.

32.     In October 2015, Mr. Veneno had an outstanding bench warrant out of Farmington Municipal Court that was preventing him from obtaining a valid driver's license.

33.     On October 5, 2015, Mr. Veneno went to the Farmington Municipal Court to address the outstanding warrant and was arrested and transported to the San Juan County Adult Detention Facility.

34.     Upon being booked into the detention center Mr. Veneno informed the booking officer and Defendant Valles that he was an insulin dependent diabetic and had a heart condition that required him to take many medications daily.

35.     Defendant Valles was deliberately indifferent to these known serious medical needs in recklessly refusing to take any action to assure that Mr. Veneno with provided with his known necessary medications.

36.     Mr. Veneno further informed the booking officer and Defendant Valles that his medical records and treatment was provided by the Indian Health Service Dulce Clinic, and he filled out and signed a Medical Authorization for the detention center medical provider to be able to immediately access his medical records, including his prescriptions.

37.     While Mr. Veneno's signature is next to the space for refusal to release medical records, he did not refuse to sign a release for such records, which he wanted medical staff to obtain to allow him access to his needed medications, and, in fact, Defendant Valles notes that she sent the release of information to Dulce Indian Health Services, which obviously required his signature.

38.     Despite being told of his inability to eat regular meals because of his diabetes, staff with utter indifference consciously responded by telling him: "Well that's all we've got. You have to eat it.  It was served to you.  You have to eat it."  This happened to him repeatedly. He was also offered Kool aid to drink which he could not drink because of the sugar content.

39.     Throughout this 5 day period Mr. Veneno begged for his insulin, diabetic meals, and heart medications.

40.     His son had his medications but Plaintiff was not allowed to speak with his son by a correctional officer.  This refusal was made knowing he did not have money or a money card to telephone his son.  Officers refused to let him use their private phones or arrange for him to have access to a phone, despite repeated requests.

41.     On October 5, 2015, Mr. Veneno repeatedly complained to detention center staff that he was in need of insulin, diabetic meals his heart medications, and to be seen by medical, but detention center staff, with deliberate indifference, consciously refused to help him at all.

42.    On October 6, 2015, Mr. Veneno began experiencing dizziness, weakness and chest pain and on multiple occasions requested the detention center staff allow him to have his insulin and heart medication, but was again consciously refused access to the medical provider.

43.    Plaintiff repeatedly requested his insulin shots but was ignored.

44.    Plaintiff repeatedly told security that he "needed his oral pill for his heart condition but was ignored again."

45.    Plaintiff also told security "he needed his oral pills for his heart condition" but was ignored again.

46.    On October 6, 2015 he again told security that he was supposed to take about seven oral pills in the morning and that he needed them but was ignored again.  He also told them that he needed to see a nurse or medical staff and reiterated that he needed to take those pills.

47.    On October 7, 2015, Mr. Veneno began experiencing increased chest pain that felt as if needles were poking his chest and both forearms began feeling numb.  He had difficulty using the restroom because of the lack of feeling in his arms.  He again, on multiple occasions, requested the detention center staff allow him to have his insulin and heart medication, but was again consciously refused his medications, meals and access to the medical provider.

48.    On October 8, 2015, Mr. Veneno continued to experience severe chest pains and both his forearms then turned black and blue from wrist to elbow.  In the morning he begged the detention center staff allow him to have his insulin and heart medication, but was again consciously refused his medications, meals and access to the medical provider.

49.     When Mr. Veneno did finally see a nurse, reportedly around 2:30 am on October 9th, the only nursing she was willing to provide was to check his routine Tuberculosis screen on his arm.  Mr. Veneno begged this nurse, Defendant Jane Doe Nurse, to give him his insulin and heart medications and showed her his black and blue forearms to no avail.  This Defendant responded, with continuing deliberate indifference, that they would tend to him when they had time.  Specifically, she told him: "Oh when we get some time we'll go ahead and tend to you."

50.     Plaintiff responded that "I've been asking for this every night every morning. . . You people have not even paid any attention to me, not one time."

51.     Thus Plaintiff was once again consciously refused his insulin and heart medications.

52.     When he asked her why they were concerned about TB, the nurse told him because "he was probably going to be in the kitchen to work."

53.     He told this nurse, Defendant Jane Doe Nurse, that he had no business being in the kitchen handling food and that he "needed his insulin shot" right away.  Mr. Veneno also asked the nurse to look at his purple arms from wrist to elbow while begging to given his insulin and heart medications to no avail.  Defendant Jane Doe Nurse responded by telling him to go to the kitchen because that is where the s wanted him.

54.     He also told security that not only did he need his medications "but he was really in pain, that his chest was really hurting and that his arms were turning black and blue."

55.     Around the same time as this interaction early in the morning on October 9th, Mr. Veneno was told that he, along with other inmates, had to transfer to a new area of the jail.  He was ordered to carry his mattress, pillow, towels and personal items.  His arms were then too

weak and his chest was in severe pain.  Mr. Veneno once again told the jail guard Defendant Jack Doe  and/or Mark Doe guards that he had a heart condition and needed his heart medication immediately.  Mr. Veneno told the corrections officer, Defendant Jack Doe guard or Defendant Mark Doe guard that he could not physically perform the task they were commanding him to perform.  With deliberate indifference to his known serious medical needs, the guard screamed at him, "You got to go".

56.     Mr. Veneno tried walking a few steps with all his items in hand, but he was unable to physically stay on his feet with the items and he collapsed to his knees.  He realized he was covered in sweat and his chest was hurting worse than it had all week.

57.     Mr. Veneno told Defendant Jack Doe guard or Defendant Mark Doe guard, "sir I cannot carry this.  I can't carry this because my arms are so weak and my chest is in pain."  He also showed the Defendant Jack Doe guard or the Defendant Mark Doe guard his purple colored arms.  The guard then screamed at him, "be a man.  Get up.  Carry your own stuff."

58.     At this point Mr. Veneno lost all hope and gave up.  He told Defendant Jack Doe guard, "do what you want with me.  I'm tired of begging you to help me.  I'm trying to ask for help.  Do you want me to die right here?"

59.     Defendant Jack Doe guard callously and with deliberate indifference continued yelling at Mr. Veneno to get up and carry his stuff.

60.     Another inmate recognizing the condition of Mr. Veneno, came to assist him and tried picking up some of Mr. Veneno's items.  Defendant Jack Doe guard or Defendant Mark Doe Guard then yelled at this good Samaritan inmate, "get back in line over there.  You have no

business here trying to help this man.  This man is going to be a man.  He is going to carry his own stuff."

61.   Mr. Veneno was forced to drag his items to his new cell.

62.   Upon entry into the new cell, two inmates came running up to Mr. Veneno and helped him up and gathered his belongings.  The inmates made his bed and laid him down.

63.   Despite all this, Mr. Veneno was put on kitchen duty lifting 20-25 trays at a time. He was very dizzy and still suffering serious chest pain.   He asked the Defendant head cook if he could sit down because he was not feeling good, experiencing severe chest pain and felt like he was going to pass out and needed to catch his breath.  The head cook, Defendant Jack Doe Head, Cook with deliberate indifference cruelly denied his request.

64.   Plaintiff was subsequently assigned the task of mopping the floor.

65.   He struggled to mop the floor, because "the mop [was] really heavy" and "[his] arms were so weak, [he] couldn't even mop the floor or nothing."

66.   Plaintiff asked to go to the restroom, because he was "going to throw up" and "[didn't] feel so good." Tr. at 28:3-7 (Veneno).

67.   Defendant Thor and/or John Doe, Head Cook indifferently and cruelly responded: "No, you just keep doing what you have to do there." Plaintiff Veneno told Defendant Jack Doe guard and/or Mark Doe Guard who was standing there: "Sir, you're going to have to do something for me here. I can't do this."

68.   Plaintiff then turned around and was going to walk back over to begin mopping again, but "[w]hen [he] turned around, everything got dizzy. [He] got dizzy, and everything just started turning, and [he] fell. [He] fell on [his] back. [H]e went backwards and [he] fell. And [he]

don't know what happened to [him] there. [H]e fainted. [H]e just forgot everything."

69.    A correctional officer immediately called for medical assistance, and Plaintiff was transported by an ambulance to the hospital.

70.    Plaintiff had experienced a severe, massive heart attack, and he received five stints in his right artery.

71.    Upon arrival at the hospital, Mr. Veneno was severely hypotensive and in hemodynamic shock secondary to complete heart block.   He also suffered from an acute kidney injury and hemorrhagic shock.

72.    Plaintiff was hospitalized and in the custody of the SJCDC until on, or about, October 12, 2015.

73.    Even after suffering this severe life threatening heart attack due to the cruel and inhumane acts of Defendants, the Defendants shackled Plaintiff to his hospital bed before he had awoken from the open heart surgery.   Mr. Veneno was restrained for a significant, cruel and unnecessary period of time during his inpatient stay at the hospital from October 9-12, 2016.

74.    Plaintiff's son, at that point, spoke with the judge and various authorities to have Plaintiff released.   Mr. Veneno, who never should have been held, was ordered released.

75.    In engaging in the deliberate indifference and negligence complained of herein, Defendants were also consciously aware that Marvin Veneno was an insulin dependent diabetic who had been taking insulin for 30 years with a serious heart condition which made him more susceptible to serious problems from not being medicated and physical exertion.   Further Defendants had a history of recklessly mismanaging and acting with deliberate indifference with respect funding and staffing to meet the medical needs of inmates.

## Allegations Relating to SJRMC 1983 Entity Liability

76.     It was well known by entity level Defendants prior to Mr. Veneno's heart attack that there was a widespread pattern of deliberately indifferent medical care in the jail, which included: refusing to let inmates see higher level medical providers, even when obviously necessary to prevent serious injury or death; hiring and retaining unqualified staff; allowing and training nurses to practice outside their nursing scope; refusing to provide medications; refusing to transfer inmates or detainees to a higher level of acuity even where necessary to prevent serious injury or death; intentionally severely underfunding services with conscious awareness that this was putting all inmates at serious risk of neglect and indifference and; a widespread custom and tolerated practice and habit of treating all inmate or detainee illnesses as faked until an inmate/detainee can prove otherwise, often to save money on providers and testing.

77.     Mr. Veneno's entirely preventable heart attack happened *after* Sheriff investigations revealed that three other inmates had recently died in the same jail after nurses and jail staff also treated their medical complaints as faked.

78.     Billy Carter, Sharon Jones and Jesus Marquez had very recently died after begging for medical help to no avail.

79.     Mr. Carter, Ms. Jones and Mr. Marquez were also openly treated as if they were faking, with nursing staff again telling jail staff that the complaints were faked and not serious and that they couldn't take all complaints, even potentially life threatening ones like these three who were begging to go to the hospital, seriously.

80.     The Sheriff Investigation into Mr. Carter's death revealed that Mr. Carter had been complaining of deficient medical care for his serious medical needs.

81.     Correctional Officer B. Crockett told Sheriff investigators that Nurse Ramona Howard had been "dealing with Mr. Carter all morning long.  She said he was faking dizziness and he attempted to fall face first towards the bunk, when she grabbed his oranges to stop him. She said he did not need not be in medical, that there was nothing they could do for him."

82.     Officer Crockett reported that when shown the stack of medical requests by Mr. Carter, Nurse Mona said "OH great!" He reported that "she just flipped through them quickly, saying she already addressed them and was not reading the requests or taking them seriously."

83.     Very importantly hereto, this same officer then stated to the Sheriff Office investigators into Carter's death: "**this is an ongoing issue with the medical staff at the jail, not taking medical requests seriously and talking about inmates faking their illness ... the medical staff appears bothered by the inmates, and their relentless requests.**" [Emphases supplied].

84.     Officer Crockett also told investigators that Mr. Carter "was not taken seriously when he was complaining about medical matters."

85.     Nurse Ramona Howard told investigators that Mr. Carter, who died of an untreated Chronic Obstructive Pulmonary Disorder, "does not have a problem breathing."

86.     In January of 2015, another inmate, Sharon Jones, died at the jail.

87.     Sheriff investigations into the January 2015 death of Sharon Jones revealed that Ms. Jones was likewise told she was pretending, and that she was unable to get meaningful medical attention (especially during the night shift), even though other inmates in her pod tried to get medical staff to pay attention.

88.     Multiple inmates reported to Sheriff's investigators that they pushed emergency call buttons repeatedly on the night she died to get her urgent medical care but no one responded and they believed the call button had actually been turned off so the inmates couldn't call for help.

89.     Even after these other three inmates died earlier in the year before Mr. Veneno's heart attack, and even after officers reported in investigations into their deaths that nurses treat the inmates as if they are faking and ignore their complaints, this pattern and practice of egregious deliberate indifference continued unchecked, leading directly to the heart attack of Mr. Veneno.

90.     Jesus Marquez died immediately after leaving the jail for the hospital in March of 2015.  Involved correctional officers repeatedly begged nursing staff to attend to Mr. Marquez, who was slurring his words, in and out of consciousness, changing colors and complaining of severe difficulty breathing.  He died of strep throat.

91.     Similarly, throughout the living Plaintiffs in the *Berkey* matter filed in this Court, inmates were all told again and again that they were faking their serious injuries or illnesses, that they didn't need medical attention, and then were also ultimately denied access to higher-level staff or transfer to the hospital.

92.     Specifically, in the *Berkey* consolidated cases, and the testimony in the injunction hearing, inmate patients of SJRMC allege, *inter alia,* deliberately indifferent failures to respond or provide higher level assessment to serious medical complaints, and persistent and reckless disregard for inmate care, including their prescription medication needs.  Thus:

        a.  Joseph Gutierrez was not given his medications for his serious medical needs causing advancement of disease and significant suffering. Mr. Gutierrez also

alleges that he needed oral surgery but the medical team refused to provide it or arrange for it despite many requests, resulting in his teeth falling out, ultimately requiring him to get dentures;

b.  Jesse Ray Berkey alleges that he was denied seriously needed anti anxiety medications, causing extreme anxiety and a major seizure with physical injuries including broken teeth. He specifically informed medical staff that he felt he would have a seizure without receiving consistent medication and treatment. Medical staff then refused to treat his broken teeth for over 48 hours;

c.  Aaron Eaton alleges that he had an appendicitis, that he complained repeatedly to medical and jail staff of pain in the right side of his stomach which was ignored and that his mother had to come down to the jail and beg for medical attention twice before he was sent to the hospital and had surgery for appendicitis with perforation. This is alleged to have caused a more serious status of the appendicitis, adhesions and infection, requiring more extensive surgery and risk of complications;

d.  Aurelio Marquez alleges that he had a known and serious ear infection that raged untreated, including a significant delay in obtaining appropriate treatment and, even when finally an order for antibiotics was made, he was not given them timely and usually only given 1 of 3 doses a day. His multiple kites were not taken seriously in a timely fashion.  This led to a grave cellulitis infection and deformity and permanent hearing loss in one of his ears. Mr. Marquez also repeatedly sent inmate requests requesting to be seen by psych and given his anti anxiety meds, but it took over a month of requests to get medications causing increased anxiety;

e.  Calvin Finch's upper dentures were lost in a shake down raid of his cell and as a result he couldn't eat very much. His multiple kites were not taken seriously in a timely fashion.  He lost weight and begged for new teeth through repeated inmate requests, yet it took over six months for him to receive a new pair of teeth;

f.  Rudy Martinez alleges that he got a terrible rash on his body and that was blown off resulting in significant delay in treatment,  that nurses repeatedly downplayed the seriousness of the situation, and that he now has scaring and repeat outbreaks as a result;

g.  Mark Hinojos alleges that he had a broken thumb for which medical treatment was significantly delayed despite repeated requests finally requiring him to splint his thumb himself causing avoidable permanent deformity;

h.  Jason Trujillo alleges that he came into jail with a post surgical boot on his foot, which was taken away, causing him to have to sit in a wheelchair rather than be

able to walk. He further alleges that he suffered major pain because his surgical wound was not properly taken care of despite repeated requests, that he was denied proper follow up, and that he was actually told when he requested to go to the hospital initially that he needed to "tough it out" because it "cost too much";

i.   David Page alleges that he had a fracture to his thumb, which was not timely treated, causing preventable infection and deformity as his requests for care were blown off. He also alleges that he made multiple requests for anxiety medications but was unable to obtain any medication or treatment for over a month;

j.   Gordon Douglas Derrick alleges ongoing significant problems of not giving him his medications despite repeated requests for medical intervention causing significant damaging side effects;

k.   Angelo Martinez alleges that he told repeatedly booking officers and caregivers that he had a condition that required him to have frequent water and his medication because of an inability to produce saliva and that he was cruelly and recklessly denied both for 24 hours until he was able to bond out;

l.   Adam Schuessler alleges that he was denied his inhalers or given them sporadically for his COPD causing significant difficulty breathing and distress;

93.   That these and many other inmates have alleged that their serious medical needs were ignored and the risk to them consciously disregarded supports the claim that there is a pattern and practice of deliberate indifference to serious medical needs here causing serious injury and death.

94.   At all times relevant hereto, with deliberate indifference, the San Juan County Detention Center was knowingly underfunded and understaffed with unqualified health professionals by both the County Defendant and SJRMC.

95.   Prior to these deaths from deliberate indifference, the former jail correctional care company, CHC, pulled out of its contract.

96.   CHC, who has itself been repeatedly sued for providing inadequate including fatal deliberately indifferent care to inmates in jails, told the County that it would require at least 2.4

million dollars to continue and to be able to provide adequate health services to the jail's inmate population.

97.     Preceding their termination notice on November 18, 2013, CHC, through Don Houston, advised San Juan County that it was willing to continue if a new contract could be negotiated "on mutually acceptable terms," however the only way the company could continue providing inmate medical care was to charge at least 2.4 million dollars.

98.     Thus, to the conscious awareness of final County decision makers, including County Commissioners, Thomas C. Havel, and, around the same time, of the heads of San Juan Regional Medical Center including Chief Administrative Officer, Tom Dean, CHC pulled out of its contract because the County was so insufficiently funding medical care that the company did not believe it could safely serve the County's inmate health care needs.

99.     Knowing that health care was underfunded, and without demanding a substantial increased in the contract budget, SJRMC determined to take over this program for around the same amount that CHC reported was insufficient but which was all the Defendant County Defendants were willing to provide.

100.    County related Defendants admittedly thus determined to hire SJRMC, as the "lowest bidder" to replace CHC, contracting for somewhere between $1.3 to $1.5 million at all times relevant hereto.

101.    At all times relevant hereto, SJRMC was consciously aware that it was not able to provide sufficient services to inmates because of the low ball bid they submitted which was knowingly offered, approved, tolerated, ratified and acquiesced in by the County.

18

102. On information and belief, SJRMC kept many of the former CHC staff to run the jail.

103. SJRMC thus intentionally continued to operate this jail on this knowingly grossly substandard, underfunded, and deliberately indifferent basis.

104. Ms. Jones died in January 2015, Mr. Carter died in February 2015, and Mr. Marquez died on March 3, 2015.

105. Subsequent to the three deaths in this case, and the revelation of the existence of a routine and deliberately indifferent unconstitutional widespread habit, practice and custom, which had the force of an unwritten jail law to treat inmates as faking their illnesses and thereby avoid the costs of providing them with timely medical care to meet their serious medical needs by avoiding hospitalizations or even access to on call physicians or nurse practitioners, SJRMC and the County Defendant announced in June 2015 that the contract would almost double from the $1.3 million dollar contract it had in fiscal year 2014, which applied.

106. SJRMC's Thomas Dean told county officials in 2015 that the vast majority of the increase was necessary because "CHC was using unqualified staff to perform services that New Mexico requires nurses to perform."

107. Thomas Dean further publicly stated, and further shockingly admitted in a letter he wrote in *January 2015* to County Chief Operations Officer Mike Stark that the Defendant "hospital discovered in *February 2014*" that the jail was using "uncertified medical assistants" and "emergency medical technicians" to "perform duties at the jail that, by state law, only nurses are qualified to perform." (Emphases supplied.)

108.    Mr. Dean further stated that those personnel had to be replaced with "qualified staff".

109.    On June 9, 2015, despite the foregoing actual knowledge of woefully insufficient budgeting, SJRMC asked the County Commissioners for the first time to approve "an increase of more than $600,000 in its contract" so that, in its own words, it could begin "to hire qualified individuals, including a registered nurse to work nights at the jail."

110.    Minutes for the San Juan County Regular Meeting of June 9, 2015 document that Defendant SJRMC asked for "an increase of $2.1 million effective July 1, 2015."

111.    This request was made "to ensure appropriate licensure for medical staff", additional call expenses for a Nurse Practitioner and to have a Registered Nurse at night.

112.    At all times relevant hereto, SJRMC, the County, and Tom Havel (both individually and officially) were thus all consciously aware and deliberately indifferent to the fact that they were jointly allowing medical staff to unlawfully perform tasks they were not qualified to perform.

113.    The County approved this request on or about June 9, 2015.

114.    Financial incentives, however, not to hospitalize remain in full effect in SJRMC decision-making.

115.    County RFPs for its jail health care contractors including CHC and SJRMC expressly include requiring these contractors to describe how they will save the County money through "proposed staffing initiatives that would result in cost containment for the County. . ."

116.    For example, Section 1.7 of the contract provides that on call doctor coverage is limited to $25,000 dollars a year.

117.    The Contract also expressly requires that nurses who transfer patients to the hospital shall have each and every such occurrence retrospectively assessed for appropriateness by the Medical Director and Director of Nursing as follows:

> ON-CALL AVAILABILITY: Professional on-call coverage shall be provided by StatDoctors, an online provider contracted by the County. In the event that the County is unable to obtain services through Stat Doctors, SJRMC will provide on-call coverage with a physician assistant or other midlevel provider and will bill the County at actual cost, not to exceed Twenty-Five Thousand Dollars and No Cents ($25,000) per year. San Juan County will contract directly with Stat Doctors. If the RN on duty assesses an inmate and determines the need for life-saving, emergency intervention in the local emergency room or urgent care center, the RN shall have the authority to have the inmate transported and contact the on-call physician afterwards to relay information. Each occurrence shall be assessed retrospectively by the Medical Director and Director of Nursing to determine the appropriateness of the assessment and to evaluate whether additional training may be indicated or other follow-up action necessary.

118.    Nurses with the temerity to transfer a patient are subject to mandatory second guessing which puts out a clear system wide message that avoiding hospital care for inmates prevents reviews of nurse decision making on pain of being subjected to additional training or other follow-up action, thereby discouraging hospitalizations for serious medical needs, exactly as occurred in this case to save the County money since the County must pay for all such hospitalizations.

119.    The long standing culture of fakery described herein by numerous county workers, was also in full blown operation at all times relevant hereto, was also well known to top officials of both the entity Defendants and Tom Havel (both individually and in his official capacity) who knowingly ratified, continued and approved the same, also with deliberate indifference.

21

120. Thus, onto the short and unqualified staffing, and the culture of fakery, the contractual agreement between the County and SJRMC provides multiple financial and other disincentives to the timely provision of medical care to meet the serious medical needs of inmates, including Plaintiff.

121. There is a pronounced tendency of medical professionals in correctional settings to be on the lookout and often overly suspicious that an inmate is faking a medical problem. This is fostered because of cost containment concerns as faked complaints are expensive.

122. Chronic deliberately indifferent understaffing like that at this jail is also well known to lead to worker burn out and increased levels of apathy toward patients, as it did here.

123. Entity Defendants dealt with this issue by knowingly and/or recklessly tolerating, and ratifying such understaffing and encouraging nurses to presume faking before calling a medical provider or hospitalizing, dismissing entirely those symptoms that are subjectively reported, or those that could be faked, as insufficient to even trigger a call to a provider, and to thereby save the County money which it was obviously loathe to spend despite actual notice of the need to do so.

124. The lack of qualified and sufficient staffing explains the kind of overwhelmed indifference described by the deputies in these cases as overworked nurses threw inmate kites in the air and rejected them as unworthy of consideration.

125. Instead Defendants' nurses adopted a reckless, deliberately indifferent wait and see approach for inmate after inmate without even obtaining meaningful evaluations by high level medical providers as were mandatory.

126.   Financial and other motivations to keep costs down, for nurses to avoid being second guessed together with an equally deliberately indifferent widespread habit and custom of treating inmates as faking their symptoms, played a causal role in Defendants not providing timely health that would have prevented Mr. Veneno's heart attack.

127.   Entity Defendants also ratified the constitutional violations by individual Defendants by consciously deciding to not discipline, re-train or even hold any peer review meetings to discuss this utter failure in care.

128.   In addition to the express policies in place, entity Defendants failed to adequately train and supervise their nursing staff, amounting to deliberate indifference to the serious medical needs of inmates presenting with medical crises like these.

## IV.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Violation of 42 U.S.C. § 1983
### Fourteenth Amendment
(Plaintiff against All Individual Defendants)

129.   Plaintiff hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

130.   42 U.S.C. § 1983 provides that:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

131.   Marvin Veneno was a citizen of the United States and Defendants to this claim are persons for the purposes of for purposes of 42 U.S.C. § 1983.

132.    Mr. Veneno had a clearly established right under the Fourteenth Amendment to be free from deliberate indifference and reckless disregard for known serious medical needs.

133.    At the time of the incidents complained of herein, Mr. Veneno was incarcerated for an alleged probation violation which had not yet been adjudicated and was protected under the 14th Amendment.[1]

134.    All individual Defendants to this claim, at all times relevant hereto, were acting under color of state law.

135.    Individual Defendants as willful participants in a joint activity while performing public functions   actually knew of Mr. Veneno's serious medical needs and deteriorating condition and nonetheless, with deliberate indifference, decided not to report the symptoms or provide him with obviously necessary urgent medical care. They did so despite being expressly aware of Plaintiff's known serious medical needs and recklessly disregarding a substantial risk of physical harm and death to Plaintiff.

136.    Individual Defendants continued to act in bad faith and with deliberate indifference to Mr. Veneno's serious medical needs and constitutional rights when they willfully ignored his repeated requests for medical attention and intentionally denied and/or delayed his access to medical care and or cruelly required him to do hard labor that he was begging them not to make him do because he was gravely ill.

137.    Individual Defendants are not entitled to qualified immunity.

---

[1] Undersigned counsel contend that he was protected under this situation under the Fourteenth Amendment.  It is alternatively alleged below that, if the Court were to find that the Eighth Amendemnt controls, that the complained of conduct violated the Eighth Amendment.

138.   Each of the individual Defendants is liable to the Plaintiff for violation of 42 U.S.C. § 1983.

139.   The acts or omissions of Defendants as described herein intentionally deprived Mr. Veneno of his constitutional rights and were moving forces and substantial significant contributing proximate causes of Mr. Veneno's injuries.

140.   As a direct result of Defendants' unlawful conduct, Mr. Veneno suffered extreme physical and mental pain and suffering while he was in Defendants' custody for over 5 days.

141.   These intentional actions and inactions of each individual Defendant as described herein intentionally deprived Mr. Veneno of due process and of rights, privileges and liberties secured by the Constitution of the United States of America causing him damages.

142.   As a proximate result of Defendant's unlawful conduct, Plaintiff has suffered injuries and losses, entitling him to recover his compensatory and special damages, including for loss of constitutional rights, loss of enjoyment of life, and his herein described horrific and terrifying pain and suffering during and leading up to this near fatal heart attack, and other special damages, all in amounts to be proven at trial.

143.   Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C.§1988, pre-judgment interest and costs as allowable by federal law.

144.   In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against individual Defendants, in that the actions were taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

### SECOND CLAIM FOR RELIEF
### Violation of 42 U.S.C. § 1983

**Eighth Amendment Prohibition Against Cruel and Unusual Punishment**
**(In the Alternative)**
(Plaintiff against All Individual Defendants)

145.    Plaintiff hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

146.    42 U.S.C. § 1983 provides that:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

147.    Marvin Veneno was a citizen of the United States and Defendants to this claim are persons for the purposes of for purposes of 42 U.S.C. § 1983.

148.    Mr. Veneno had a clearly established right under the Eighth Amendment to be free from deliberate indifference and reckless disregard for known serious medical needs.

149.    At the time of the incidents complained of herein, Mr. Veneno was incarcerated for an alleged probation violation which had not yet been adjudicated.[2]

150.    All individual Defendants to this claim, at all times relevant hereto, were acting under color of state law.

151.    Individual Defendants as willful participants in a joint activity actually knew of Mr. Veneno's serious medical needs and deteriorating condition and nonetheless, with deliberate indifference and. cruelty, decided not to report the symptoms or provide him with obviously necessary urgent medical care and to cruelly make him continue to do stressful physical work

---

[2] In the event that the Court concludes that the Eight Amendment is the source of the protection from deliberate indifference to Mr. Veneno's medical needs while awaiting adjudication of an alleged probation violation, this claim is alternatively brought under the Eighth Amendment.

they knew he said he could not do due to severe illness.  They did so despite being expressly aware of Plaintiff's known serious medical needs and recklessly disregarding a substantial risk of physical harm and death to Plaintiff.

152.   Individual Defendants continued to act in bad faith and with deliberate indifference to Mr. Veneno's serious medical needs and constitutional rights when they willfully ignored his repeated requests for medical attention and intentionally denied and/or delayed his access to medical care.

153.   Individual Defendants are not entitled to qualified immunity.

154.   Each of the individual Defendants is liable to the Plaintiff for violation of 42 U.S.C. § 1983.

155.   The acts or omissions of Defendants as described herein intentionally deprived Mr. Veneno of his constitutional rights and were moving forces and substantial significant contributing proximate causes of Mr. Veneno's injuries.

156.   As a direct result of Defendants' unlawful conduct, Mr. Veneno suffered extreme physical and mental pain and suffering while he was in Defendants' custody for over 5 days.

157.   These intentional willful actions and inactions of each individual participating Defendant as described herein intentionally and jointly deprived Mr. Veneno of due process and of rights, privileges and liberties secured by the Constitution of the United States of America causing him damages.

158.   As a proximate result of Defendants unlawful conduct, Plaintiff has suffered injuries and losses, entitling him to recover his compensatory and special damages, including for loss of constitutional rights, loss of enjoyment of life, and his herein described horrific and

terrifying pain and suffering during and leading up to this near fatal heart attack, and other special damages, all in amounts to be proven at trial.

159.    Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C.§1988, pre-judgment interest and costs as allowable by federal law.

160.    In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against individual Defendants, in that the actions were taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

**THIRD CLAIM FOR RELIEF**
**Violation of 42 U.S.C. § 1983**
**Fourteenth Amendment**
**(Plaintiff against County Defendant and SJRMC)**

161.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

162.    42 U.S.C. § 1983 provides that:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

163.    Mr. Veneno was a citizen of the United States and the Defendants to this claim are persons for the purposes of 42 U.S.C. §1983.

164.    Mr. Veneno had a clearly established right under the Fourteenth Amendment to be free from deliberate indifference to his known serious medical needs.

165.     At the time of the incidents complained of herein, Mr. Veneno was incarcerated for an alleged probation violation which had not yet been adjudicated.[3]

166.     SJRMC, at all times relevant hereto, was acting under color of state law, as the functional equivalent of a municipality providing medical care to inmates.

167.     The County, at all times relevant hereto, was acting under the color of state law and had a non-delegable duty to provide constitutionally adequate medical care for inmates.

168.     The County is also directly liable for their own policies that were moving forces in this constitutional injury under the contract between the County and the private Defendant, their own ongoing toleration and/or ratification of the widespread pattern and practice of deliberate indifference; and their deliberately indifferent failures in training and supervising of medical care providers in the jail.

169.     Defendants are sued herein for their deliberately indifferent policies, practices, habits, customs and widespread usages as described with particularity above with respect to the serious medical needs of inmates like Mr. Veneno and their deliberately indifferent failures in training and supervising its employees, including individual Defendants.

170.     The contract between these Defendants constitutes a policy action for § 1983 analysis as it reflects a written understanding for a fixed plan to provide medical care for all inmates at the jail.

171.     The policy decision to grossly underfund medical care in the jail despite actual knowledge that such underfunding deprived inmates of adequate qualified medical staff violates

---

[3] Undersigned counsel contend that he was protected under this situation under the Fourteenth Amendment.  It is alternatively alleged below that, if the Court were to find that the Eighth Amendemnt controls, that the complained of conduct violates the Eighth Amendment.

the County's constitutional obligation to provide medical care under the Fourteenth Amendment and was a moving force in the deliberate indifference complained of herein.

172.    Defendants' hereto deliberately indifferent failures to train, supervise, or create coherent relevant policies, are all actionable policy decisions and moving forces and substantial significantly contributing proximate causes of the violation of Mr. Veneno's constitutional rights.

173.    It was well known by Defendants prior to Mr. Veneno's heart attack that there was a widespread pattern of deliberately indifferent medical care in the jail, which included: refusing to let inmates see higher level medical providers, even when obviously necessary to prevent serious injury or death; hiring and retaining unqualified staff; allowing and training nurses to practice outside their nursing scope; refusing to provide medications; refusing to transfer inmates or detainees to a higher level of acuity even where necessary to prevent serious injury or death, and; a widespread custom and tolerated practice and habit of treating all inmate or detainee illnesses as faked until an inmate/detainee can prove otherwise, often to save money on providers and testing.

174.    Defendants hereto were on actual notice that their deliberately indifferent policies, which include the deliberately indifferent failures to train and supervise, would result and had resulted in a pattern of not providing desperately needed care to inmates with serious medical needs causing injury and death.

175.    The failures in training and supervision were so obvious that the failure to provide the same was deliberately indifferent to the rights of the relevant public and a moving force in the complained of injuries.

176.    Defendants, through policy makers and final delegated decision-makers, ratified the employees and subordinates unconstitutional conduct by approving their decisions and the basis for them, including ongoing toleration of the known widespread culture of treating inmates as faking to save money and decision to not sufficiently fund jail medical care or provide staffing by qualified personnel.

177.    Defendants were all willful participants in a joint activity.

178.    These Defendants knew that potentially serious or fatal consequences could be suffered by such individuals (including Mr. Veneno) by their challenged policies and practices and by their failures to properly train and supervise medical care and/or develop adequate policies.

179.    Defendants' actions were moving forces in individual Defendants' and other staffs' repeated decisions to deny and delay treatment and hospitalization of Mr. Veneno during a medical crisis.

180.    As a proximate result of Defendant's unlawful conduct, Plaintiff has suffered injuries and losses, entitling him to recover his compensatory and special damages, including loss of constitutional rights, loss of enjoyment of life, pain and suffering during this event, and other special damages, all in amounts to be proven at trial.

181.    Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C.§1988, pre-judgment interest and costs as allowable by federal law.

182.    Plaintiff is entitled to punitive damages against the private entity Defendant SJRMC, in that its actions were taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

**FOURTH CLAIM FOR RELIEF**
**Violation of 42 U.S.C. § 1983**
**Eighth Amendment Prohibition Against Cruel and Unusual Punishment**
**(In the Alternative)**
**(Plaintiff against County Defendant and SJRMC)**

183.   Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

184.   42 U.S.C. § 1983 provides that:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

185.   Mr. Veneno was a citizen of the United States and the Defendants to this claim are persons for the purposes of 42 U.S.C. §1983.

186.   Mr. Veneno had a clearly established right under the Eighth Amendment to be free from deliberate indifference to his known serious medical needs and from cruel and unusual punishment..

187.   At the time of the incidents complained of herein, Mr. Veneno was incarcerated for an alleged probation violation which had not yet been adjudicated.[4]

188.   SJRMC, at all times relevant hereto, was acting under color of state law, as the functional equivalent of a municipality providing medical care to inmates.

---

[4] In the event that the Court concludes that the Eighth Amendment is the source of the protection from deliberate indifference to Mr. Veneno's medical needs while awaiting adjudication of an alleged probation violation, this claim is alternatively brought under the Eighth Amendment.

189.    The County Defendant, at all times relevant hereto, was acting under the color of state law and had a non-delegable duty to provide constitutionally adequate medical care for inmates.

190.    The County Defendant is also directly liable for their own policies that were moving forces in this constitutional injury under the contract between the County and the private Defendant, their own ongoing toleration and/or ratification of the widespread pattern and practice of deliberate indifference; and their deliberately indifferent failures in training and supervising of medical care providers in the jail.

191.    Defendants are sued herein for their deliberately indifferent policies, practices, habits, customs and widespread usages as described with particularity above with respect to the serious medical needs of inmates like Mr. Veneno and their deliberately indifferent failures in training and supervising its employees, including individual Defendants.

192.    The contract between these Defendants constitutes a policy action for § 1983 analysis as it reflects a written understanding for a fixed plan to provide medical care for all inmates at the jail.

193.    The policy decision to grossly underfund medical care in the jail despite actual knowledge that such underfunding deprived inmates of adequate qualified medical staff violates the County's constitutional obligation to provide medical care under the Eighth Amendment and was a moving force in the deliberate indifference complained of herein.

194.    Defendants' hereto deliberately indifferent failures to train, supervise, or create coherent relevant policies, are all actionable policy decisions and moving forces and substantial

significantly contributing proximate causes of the violation of Mr. Veneno's constitutional rights.

195.    It was well known by Defendants prior to Mr. Veneno's heart attack that there was a widespread pattern of deliberately indifferent medical care in the jail, which included: refusing to let inmates see higher level medical providers, even when obviously necessary to prevent serious injury or death; hiring and retaining unqualified staff; allowing and training nurses to practice outside their nursing scope; refusing to provide medications; refusing to transfer inmates or detainees to a higher level of acuity even where necessary to prevent serious injury or death, and; a widespread custom and tolerated practice and habit of treating all inmate or detainee illnesses as faked until an inmate/detainee can prove otherwise, often to save money on providers and testing.

196.    Defendants hereto were on actual notice that their deliberately indifferent policies, which include the deliberately indifferent failures to train and supervise, would result and had resulted in a pattern of not providing desperately needed care to inmates with serious medical needs causing injury and death.

197.    The failures in training and supervision were so obvious that the failure to provide the same was deliberately indifferent to the rights of the relevant public and a moving force in the complained of injuries.

198.    Defendants, through policy makers and final delegated decision-makers, ratified the employees and subordinates unconstitutional conduct by approving their decisions and the basis for them, including ongoing toleration of the known widespread culture of treating inmates

as faking to save money and decision to not sufficiently fund jail medical care or provide staffing by qualified personnel.

199.    Defendants were all willful participants in a joint activity.

200.    These Defendants knew that potentially serious or fatal consequences could be suffered by such individuals (including Mr. Veneno) by their challenged policies and practices and by their failures to properly train and supervise medical care and/or develop adequate policies.

201.    Defendants' actions were moving forces in individual Defendants' and other staffs' repeated decisions to deny and delay treatment and hospitalization of Mr. Veneno during a medical crisis.

202.    As a proximate result of Defendant's unlawful conduct, Plaintiff has suffered injuries and losses, entitling him to recover his compensatory and special damages, including loss of constitutional rights, loss of enjoyment of life, pain and suffering during this event, and other special damages, all in amounts to be proven at trial.

203.    Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C.§1988, pre-judgment interest and costs as allowable by federal law.

204.    Plaintiff is entitled to punitive damages against the private entity Defendant SJRMC, in that its actions were taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

## FIFTH CLAIM FOR RELIEF
### Negligence
(Plaintiff against SJRMC, Summit Food Service, LLC, Yvonne Valles, Jane Doe Nurse, and Thor Dahl and/or John Doe Head Cook)

35

205.    Plaintiff incorporates all other paragraphs of this Complaint as if fully set forth herein.

206.    Defendants to this claim are private companies and individuals, none of whom is entitled to immunities under the New Mexico Tort Claim Act.

207.    At all times relevant hereto, Mr. Veneno was under the care and treatment of SJRMC or Summit Food Service LLC and their respective staffs, including individual nursing and head cook Defendants, through their contractual relationship with the County.

208.    SJRMC and Summit Food Service, LLC, are vicariously liable for the negligent acts and omissions of their agents and/or employees, and directly liable for their own negligent failures in training, policies, and practices.

209.    Corporate Defendants hereto had a duty to provide or obtain reasonable medical care, treatment, proper supervision  and monitoring of temporary inmate task assignments of inmates assigned to the kitchen and to provide  relief from kitchen and stressful physical labor and related janitorial type work assignments that inmates like Plaintiff could not perform due to illness to inmates at the jai, and to exercise reasonable care in the training and supervision  of their employees.

210.    These duties of care are informed by state law.

211.    These duties are also informed by the relevant practice standards and the NCCHC standards and the common law.

212.    Individual Nursing Defendants and other employees, including other involved LPNs and RNs, and the Head Cook, while acting within the scope of their employment, variously committed negligent acts and omissions with respect to the care and treatment  and

proper supervision, monitoring, assignment, utilization and or employment of Mr. Veneno and by requiring him to do work he was medically unable to do to their awareness without endangering himself.

213.   Individual Nursing Defendants  and Head Cook defendant hereto all had nurse-patient relationships or supervisory/monitoring/assignment duties. Protective special and quasi employment relationships with Mr. Veneno and all owed him a duty of due care.

214.   Individual Nursing Defendants hereto and other caregivers and Head Cook Defendant were all acting within the scope of their employment with SJRMC or Summit Food Service, LLC at the times pertinent to this complaint and breached their duty of care and were negligent in their treatment of Mr. Veneno, causing him very serious life threatening injury.

215.   SJRMC and Summit Food Service, LLC owed a duty of care to Mr. Veneno to establish appropriate protocols in the management and assessment of inmates presenting with serious medical conditions.

216.   Involved caregivers and the Head Cooks at the jail grossly deviated and breached their duties to properly care for and treat Mr. Veneno's serious medical needs by *inter alia;* negligently and recklessly not giving him his prescription medications and appropriate meals, negligently and recklessly failing to properly assess him after obvious changes in condition, in recklessly and negligently treating him as though he was faking his conditions, in recklessly and negligently requirng him to continue to perform physical labor that was known or should have been known to be dangerous for him given his obvious sickness as described herein, in recklessly and negligently treating his condition as non-emergent, and denying and delaying and failing to timely access or provide or obtain urgently needed medical care for him.

217.     Defendants, directly, and/or through their agents and employees had at least a tacit understanding and consciously conspired and deliberately pursued a common plan or design to commit a tortious act.

218.     This negligence caused Mr. Veneno significant suffering and  very serious physical injury.

219.     These defendants are jointly and severaly liable for all compensatory and also punitive damages for this egregious conduct.

### V.  PRAYER FOR RELIEF

Plaintiff prays that this Court enter judgment for the Plaintiff and against each of the Defendants and enter the following relief:

(a)     All appropriate relief at law and equity;

(b)     Economic losses on all claims allowed by law;

(c)     Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

(d)     Punitive damages on all claims allowed by law and in an amount to be determined at trial;

(e)     Attorneys' fees and costs associated with this action, including expert witness fees, on all claims allowed by law, including but not limited to 42 U.S.C. §1988;

(f)     Pre- and post-judgment interest at the highest lawful rate; and

(g)     Any further relief that this Court deems just and proper.

PLAINTIFF RESPECTFULLY REQUESTS A JURY TRIAL ON ALL TRIABLE ISSUES.

Respectfully submitted this __ day of November, 2016.

HOLLAND, HOLLAND EDWARDS & GROSSMAN, P.C.

*/s/ John R. Holland*
JOHN R. HOLLAND
ANNA HOLLAND EDWARDS
ERICA T. GROSSMAN
DANIEL WEISS
Attorneys for Plaintiff
1437 High Street
Denver, Colorado 80218
Telephone: (303) 860-1331
Fax: (303) 832-6506

TUCKER, BURNS & HATFIELD LAW FIRM

*/s/Mitchel S. Burns*
GREGORY M. TUCKER
MITCHEL S. BURNS
CHRISTIAN A. HATFIELD
Attorneys for Plaintiff
105 North Orchard Avenue
Farmington, New Mexico 87401
Telephone: (505) 325-7755
Fax: (505) 325-6239